UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHAWN M. HILL,

    Plaintiff,

    v.                              CAUSE NO. 3:21-CV-716-RLM-MGG

ROBERT E. CARTER, et al.,

    Defendants.

OPINION AND ORDER

Shawn M. Hill, a prisoner without a lawyer, filed an amended complaint. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Hill has filed this lawsuit against 21 Indiana Department of Correction officials and employees for events that occurred at the Miami Correctional Facility.[1] He alleges he is a pretrial detainee who was being held in Department of Correction custody for "safekeeping." ECF 16 at 3. When he arrived at the Miami facility on October 27 or 28, 2019, Mr. Hill was placed into the general population—first into the J Housing Unit then into the L Housing Unit. He asked a counselor why he was there instead of in administrative segregation or restrictive housing, and the counselor responded by asking him whether he had issues with any other inmate. Mr. Hill replied, "No, not as far as I know." *Id*.

Mr. Hill was assigned a bunkmate in L Unit who "owed a lot of money to different organizations (gangs)." *Id*. Unbeknownst to Mr. Hill, his bunkmate began buying "lots of merchandise in the plaintiff's name, from multiple offenders' 'stores.'" *Id*. at 4. His bunkmate "checked-out/moved" when payment was due, and Mr. Hill was attacked the next day. *Id*. Mr. Hill let the counselor of L Unit know what had happened, and he was told, "[I]f it happens again, let me know." *Id*.

Mr. Hill was attacked seven more times in L Unit, and had to go to the medical unit the eighth time. He doesn't describe his injuries or the care he received there. After medical finished evaluating his injuries, he signed a protective custody request.

---

[1] Mr. Hill was at the Indiana State Prison when he initiated suit. ECF 1. He has since informed the court he is no longer there and will be "using my mother's address 1417 Parkinson St. Vincennes, IN 47591 as my temporary mailing address." ECF 17.

2

Instead of being placed in protective custody, he was transferred to a different unit in general housing—C Housing Unit. Mr. Hill filed a grievance about this placement. He was attacked two more times while in C Unit. He was moved to B Housing Unit for unrelated reasons, where he was attacked once more.

He then spoke with Counselor Gonzalez and signed a second request for protective custody. In response to that request, he was placed back into C Unit where he had been attacked twice and was attacked again on March 4, 2020 (all of the events recounted from this point on occurred in 2020). He was taken to the administration/medical building after the attack. Once there, he was placed in handcuffs and made another protective custody request, which was refused. He was told he was being moved back to J Unit "with the people that had already attacked him 8 times in" L Unit. *Id*. at 5. He explained to Sergeant Emery that he risked harm by being placed there. Sergeant Emery and Captain M. Morson told Mr. Hill he didn't have a choice. Mr. Hill refused to go, and Sergeant Emery called C.O. Benjamin and C.O. Evans to assist in forcefully moving Mr. Hill to the assigned unit. Mr. Hill again pleaded with the officers, telling them he risked being harmed if he was made to go back, but they ignored his pleas.

Mr. Hill began running up the stairs and tried to go through a fire exit to avoid being returned to J Unit. The fire exit was locked, so Mr. Hill turned around and kneeled on the ground. C.O. Benjamin and C.O. Evans shot him with multiple tasers and sprayed him with large amounts of mace. C.O. Benjamin and C.O. Evans then shoved him onto his face, put shackles on his ankles "so tight they were cutting into

3

his skin," and walked him back down the stairs where they were met by Sergeant Johnson, C.O. Dale, and Sergeant Emery. *Id*. at 6. As the officers led him back to the housing unit, C.O. Dale "gripped plaintiff's right hand, with his hand gripped around plaintiff's thumb, and yanked his hand all the way up to his shoulder, while handcuffed still" causing significant pain and his thumb to "pop and crack a lot." *Id*. Mr. Hill screamed and asked C.O. Dale to stop, but the officers just laughed. Mr. Hill began pushing C.O. Dale to get away, and C.O. Dale released Mr. Hill's hand, wrapped his arm around his neck, and began choking him. At that point, C.O. Benjamin, C.O. Evans, Sergeant Johnson, and Sergeant Emery began punching and tasing him. C.O. Dale then picked him up and dropped him on his head, knocking him unconscious. When he regained consciousness, he was on the ground, and all five officers were "kicking plaintiff, tazing him, stomping him, and macing him." *Id*. After a few minutes, the officers escorted Mr. Hill to the shower. When finished, he was ordered to cuff-up and was told he was going back to J Unit. Mr. Hill protested again, so the officers again sprayed him with mace, emptying several cans. He describes the injuries he sustained as "large cuts on across the backs of his ankles (that ultimately left permanent scars), very swollen wrists that he couldn't move or use, and even more swollen right them, that he also couldn't move or use." *Id*. at 7.[2]

Mr. Hill sought medical attention for his injuries the next day. A nurse at the medication window told him to go to the medical building because his thumb "looks

---

[2] Mr. Hill alleges C.O. Benjamin and C.O. Evans wrote a false conduct report for "Battery on Officer," which should have triggered a mandatory stay in segregation. Instead, Mr. Hill was retuned to J Unit. The conduct report was "later proven false by camera review and dismissed." ECF 16 at 7.

4

certainly broken." *Id*. Once he arrived, "the lady officer behind the desk" asked him why he was there. *Id*. He explained he needed medical attention and that the medication nurse had told him to come, but the officer told him he needed to fill out a medical slip first and would be scheduled to see a nurse. Mr. Hill protested that it was an emergency. He also explained that he was in danger in J Unit and asked her to fill out a protective custody request for him. She declined to do so and instead called for assistance. Sergeant Burton and Lieutenant Newtrouer responded, and Mr. Hill told them of his issues. They told him to go back to J Unit and fill out the paperwork. Mr. Hill refused, so Lieutenant Newtrouer handcuffed him. Sergeant Burton grabbed Mr. Hill's injured wrist and "twisted it up behind his back and smacked the cuffs onto his already swollen and injured wrists, closing them way too tight." *Id*. at 8. Both officers grabbed him and began to drag him towards J Unit. Sergeant Burton slammed him onto his face. C.O. Dale and Sergeant Johnson then walked over to taunt him and help the other officers drag him into J Unit. While this was occurring, the inmates from the surrounding units were shouting at him. As soon as he got back to his cell in J Unit, he was "jumped" by the same people in J Unit and L Unit that had attacked him before. *Id*. Mr. Hill remained in J Unit for three weeks where he was attacked more six times.

After three weeks, he was found guilty of a conduct report he had "intentionally caught" and was placed in the restricted housing unit as a punishment. *Id*. at 9. Lieutenant Myers told him they were going to keep him there since he was only at the Miami facility from the county jail for "safekeeping." *Id*. But on June 17, C.O.

Wright informed him over the intercom that he returning to general housing. He protested, and Sergeant Norris came to his cell to ask what the problem was. He told Sergeant Norris of the previous attacks and ongoing threats, and Sergeant Norris handed him a protective custody request form and told him to go speak with Lieutenant Myers. Mr. Hill again explained the issue to Lieutenant Myers, but Lieutenant Myers, Captain Stalhood, and Counselor Mann decided he needed to go back to the general population. When Mr. Hill refused, Lieutenant Morgan and C.O. Malott grabbed him and began to force him out of the room by "pulling and twisting Plaintiff's body until his feet slid off the trim of the door, eliminating all resistance against Morgan pulling him, causing his head to connect with Morgan's nose." *Id*. Mr. Hill was then "slammed on the floor, and Defendant Malott smeared his face in the blood coming from Defendant Morgan's nose, and shackles [were] placed on his ankles." *Id*. C.O. Malott, Sergeant Norris, and C.O. Johnson took him to A Housing Unit. Along the way, Officer McCray had to stop C.O. Johnson from attacking Mr. Hill.

On June 18, his first morning in A Unit, Mr. Hill was "jumped" on his way to breakfast and had to go to the facility hospital. *Id*. He doesn't describe his injuries but says he needed "treatment." *Id*. He was attacked nine times while in A Unit. He reported every attack, but he doesn't say to whom. On July 24, he informed C.O. Grizzle of an attack and tried to "intentionally g[e]t a write-up" so he could be returned to the restricted housing unit. *Id*. He was kept in A Unit for another month before being returned to L Unit. Mr. Hill says he was attacked eleven times in L Unit

6

between August and December. He was "found unconscious, in a pool of blood in his cell" in L Unit on December 11 and was taken to the facility hospital. *Id*. at 10. Mr. Hill was transferred to the Indiana State Prison on December 22.

Mr. Hill alleges that he filed many grievances—including the required appeals—about the allegations in his complaint, but he never got a response. He alleges that the various defendants failed to protect him and subjected him to excessive force in violation of the Fourteenth Amendment. He asks for compensatory and punitive damages.[3]

Because Mr. Hill alleges he was a pretrial detainee when these events occurred, his claims must be analyzed under the Fourteenth Amendment. Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." Tucker v. Randall, 948 F.2d 388, 390–391 (7th Cir. 1991) (citation omitted). Nevertheless, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." Miranda v. County of Lake, 900 F.3d at 353–354. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" Mays v. Emanuele, 853 F. App'x 25,

---

[3] Mr. Hill also asks for criminal charges to be pursued against the defendants, but such relief is not available in a civil rights action.

7

27 (7th Cir. 2021) (citing Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)). In determining whether a challenged action is objectively unreasonable, courts must consider the "totality of facts and circumstances." Mays v. Dart, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). "[N]egligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. Miranda v. Lake County, 900 F.3d at 353.

To establish an excessive force claim under the Fourteenth Amendment, a plaintiff must allege "the force purposefully or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 396-397. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, and the severity of the security problem. *Id.* at 397. "[N]ot every use of force is a punishment: 'Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.'" Husnik v. Engles, 495 Fed. Appx. 719, 721 (7th Cir. 2012) (quoting Bell v. Wolfish, 441 U.S. at 537).

Mr. Hill alleges that C.O. Benjamin and C.O. Evans tasered him several times and sprayed him with large amounts of mace while he was handcuffed and kneeling on the ground on March 4, 2020. He alleges his ankles were shackled, and C.O. Dale yanked his thumb up to his shoulder causing it to pop and crack. C.O. Dale also choked him while C.O. Benjamin, C.O. Evans, Sergeant Johnson, and Sergeant

8

Emery punched and tasered him. C.O. Dale dropped him on his head, knocking him unconscious, and all five officers continued to kick, punch, tase, and mace him while he was on the ground. Mr. Hill sustained injuries that left him with swollen wrists and permanent scars. Giving Mr. Hill the benefit of the inferences to which he is entitled at this stage, he will be allowed to proceed on excessive force claims against C.O. Benjamin, C.O. Evans, C.O. Dale, Sergeant Johnson, and Sergeant Emery.

Mr. Hill also alleges that the next day—when he refused to go willingly—Sergeant Burton and Lieutenant Newtrouer forced him to J Unit by handcuffing him too tight, purposefully twisting his injured hand behind his back, slamming him onto his face, and dragging him down the hallway. Although the facts are sparse regarding this incident and further factual development may show the defendants' conduct was not objectively unreasonable under the circumstances, giving Mr. Hill the benefit of the inferences to which he is entitled at the screening stage, he will be allowed to proceed on excessive force claims Sergeant Burton and Lieutenant Newtrouer.

Finally, Mr. Hill alleges that on June 17, 2020, when he refused to go back into the general population willingly, Lieutenant Morgan and C.O. Malott slammed him onto the floor and smeared his face in blood after his head connected with Lieutenant Morgan's nose during the forced-transfer process. Again, although the facts are sparse regarding this incident and further factual development may show the defendants' conduct wasn't objectively unreasonable under the circumstances, giving Mr. Hill the benefit of the inferences to which he is entitled at the screening stage, he

9

will be allowed to proceed on excessive force claims Lieutenant Morgan and C.O. Malott.

Mr. Hill also alleges that many of the defendants failed to protect him. "Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." Kemp v. Fulton Cty., 27 F.4th 491, 494 (7th Cir. 2022) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.")). The court of appeals has extended the Fourteenth Amendment's objective unreasonableness test found in Kingsley v. Hendrickson, 576 U.S. 389 (2015) to failure to protect claims. *See id*. at 495 (citing Hardeman v. Curran, 933 F.3d 816 (7th Cir. 2019)). A pretrial detainee states a failure to protect claim when he alleges:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, *even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved*—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 496 (emphasis added by citing court) (quoting Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (en banc)). As to the second element, our court of appeals equates "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005). The third element "requires only that the defendant's conduct be objectively unreasonable." Kemp v. Fulton Cty., 27 F.4th at 497. Negligence on a defendant's

10

part isn't enough; instead, they "must intend to carry out a certain course of actions." *Id*. Overall, reasonableness "must be determined in light of the totality of the circumstances." Pulera v. Sarzant, 966 F.3d 540, 550 (7th Cir. 2020).

Mr. Hill lists the paragraphs that pertain to his failure to protect claims on pages ten and eleven of his amended complaint. However, the allegations contained in those paragraphs are sparse with regard to what information was available to the officers before the attacks. While he paints an overall picture of ongoing violence, that general knowledge cannot plausibly be imputed to the individual officers without additional allegations about the specific safety risk(s). *See* Kemp v. Fulton Cty., 27 F.4th at 496 ("[A] pretrial detainee does not need to show that an officer *with all the information about a potential health or safety risk* actually did put the puzzle pieces together.") (emphasis added); *see also* Brown v. Budz, 398 F.3d at 913 (A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility."). For example, Mr. Hill claims he told Sergeant Emery, Captain Morson, C.O. Benjamin, C.O. Evans, and C.O. Johnson that he risked being harmed if he was returned to J Unit on March 4, 2020, but he doesn't elaborate further as to what he told them or what other information was available about his situation. The same is true of the allegations that he told Sergeant Burton and Lieutenant Newtrouer the next day that he couldn't go back to J Unit because of existing threats and a protective custody request that had been denied. In a similar fashion, he alleges that he told Sergeant Norris and Lieutenant Myers on June 17, 2020, he couldn't move from the restricted housing unit to A Unit because of threats,

11

attacks, and protective custody issues and that Counselor Mann agreed he needed to be returned to the general population. Additionally, he claims he informed C.O. Grizzle of an attack and tried to get written up on July 24, 2020, to get placed back in the restricted housing unit. These assertions deal with generalized risks of violence—stated in vague terms—as opposed to a specific risk of harm to Mr. Hill. Without more, it can't be plausibly inferred that any of these defendants acted objectively unreasonably when they returned (or helped facilitate the return of) Mr. Hill to the various general population units. Mr. Hill hasn't alleged enough factual information to plausibly suggest a reasonable officer presented with the same circumstances would have appreciated the "high degree of risk involved" in doing so. *See* Kemp v. Fulton Cty., 27 F.4th at 496; *see also Bissessur*, 581 F.3d at 602 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks and citation omitted).[4] Therefore, these claims will be dismissed.

Finally, Mr. Hill names Department of Correction Commissioner Robert E. Carter, Miami facility warden William Hyatt, Assistant Miami facility Warden Payne, and Deputy Miami facility Warden Sharon Hawk, as defendants. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own

---

[4] Mr. Hill also alleges he spoke with Counselor Gonzalez and signed a second request for PC, but he does not allege she was responsible for the decision to deny that request. These allegations do not state a claim against her. He further alleges Defendant Wright failed to protect him, but he or she is not named as a defendant in this action.

12

misdeeds but not for anyone else's." *Id*. at 596. To be held liable, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). While "*Kingsley's* objective-unreasonableness test applies equally to supervisory-liability claims," a defendant must have "acted purposefully, knowingly, or with reckless disregard for the consequences" of their actions or inaction. *Kemp*, 27 F.4th at 498. Here, Mr. Hill does not mention the supervisory defendants anywhere in the body of the complaint. He does not plausibly allege they were personally involved in or had knowledge of the events that occurred. Thus, without more, he has not stated any claims against them. *See* Bissessur v. Indiana Univ., 581 F.3d at 602.

Mr. Hill isn't proceeding in forma pauperis, so the court won't serve the defendants pursuant to 28 U.S.C. § 1915(d). Rather, it is Mr. Hill's obligation to serve the defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4. Pursuant to Rule 4(c)(2), "Any person who is at least 18 years old and *not a party* may serve a summons and complaint." (emphasis added). If Mr. Hill would like to pay the United States Marshals Service to effect service of process, he needs to write for further information to: United States Marshals Service, Attn: Civil Service Question, 1300 South Harrison Street, Fort Wayne 46802.

For these reasons, the court:

(1) GRANTS Shawn M. Hill leave to proceed against Correction Official Marquis Benjamin, Correction Official Shannon Evans, Correction Official Dale, Sergeant Johnson, and Sergeant Cory Emery in their individual capacities for compensatory and punitive damages for subjecting him to excessive force on March 4, 2020, in violation of the Fourteenth Amendment;

(2) GRANTS Shawn M. Hill leave to proceed against Sergeant Burton and Lieutenant Newtrouer in their individual capacities for compensatory and punitive damages for subjecting him to excessive force on March 5, 2020, in violation of the Fourteenth Amendment;

(3) GRANTS Shawn M. Hill leave to proceed against Lieutenant Morgan and Correction Official Malott in their individual capacities for compensatory and punitive damages for subjecting him to excessive force on June 17, 2020, in violation of the Fourteenth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Commissioner Robert E. Carter, Warden William Hyatt, Assistant Warden Payne, Deputy Warden Sharon Hawk, Counselor Gonzalez, Official Morson, Lieutenant Myers, Sergeant Norris, Correction Official Johnson,[5] Correction Official Grizzle, Lieutenant Thompson, and Counselor Mann;

---

[5] Mr. Hill lists both Sergeant Johnson and Correction Official Johnson as defendants. It is unclear whether these are two different individuals. In the body of his amended complaint, he refers to Sergeant Johnson repeatedly. However, he only refers to Correction Official Johnson on one page, where he says Correction Official Johnson helped escort him to A Unit and Officer McCray (who is not listed as a defendant) "had to stop

(6) DIRECTS the clerk to sign and seal summons for Correction Official Marquis Benjamin, Correction Official Shannon Evans, Correction Official Dale, Sergeant Johnson, Sergeant Cory Emery, Sergeant Burton, Lieutenant Newtrouer, Lieutenant Morgan, and Correction Official Malott and send them to Shawn M. Hill; and

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Correction Official Marquis Benjamin, Correction Official Shannon Evans, Correction Official Dale, Sergeant Johnson, Sergeant Cory Emery, Sergeant Burton, Lieutenant Newtrouer, Lieutenant Morgan, and Correction Official Malott to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 6, 2022

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT

---

Defendant Johnson from attacking plaintiff." ECF 16 at 9. These allegations don't state a claim against Correction Official Johnson; therefore, he will be dismissed.